IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville December 19, 2023

**RONALD P. ELLIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 14-04664      Jennifer Johnson Mitchell, Judge**

_____

**No. W2023-00203-CCA-R3-PC**
_____

Ronald P. Ellis, Petitioner, sought post-conviction relief based on ineffective assistance of counsel after this Court affirmed his first degree murder conviction. *State v. Ellis*, No. W2017-01035-CCA-R3-CD, 2018 WL 4584124, at *1 (Tenn. Crim. App. Sept. 21, 2018). The post-conviction court denied relief. Petitioner appealed, arguing that trial counsel was ineffective for failing to include proof in the motion to suppress his statement to authorities about whether Petitioner was brought before a judge or magistrate before making his statement and whether Petitioner's cognitive abilities prevented him from adequately waiving his rights. Because the evidence does not preponderate against the post-conviction court's findings and conclusions, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

W. Price Rudolph, Memphis, Tennessee, for the appellant, Ronald P. Ellis.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was convicted of first degree murder in 2017 based on events that took place in 2014 in a Target parking lot in Memphis, during which he shot and killed his ex-girlfriend. *Ellis*, 2018 WL 4584124, at *1-3. Petitioner was eventually arrested after a police chase in Georgia. *Id.* Prior to trial, Petitioner filed a motion to suppress his

statement and a confession that he made to law enforcement. *Id.* The trial court denied the motion after a two-day hearing. *Id.*

On direct appeal, this Court affirmed the trial court's denial of the motion to suppress, specifically addressing Petitioner's complaint that his confession was involuntary because he was not brought before a judge or magistrate during the six days he spent in custody in Georgia. *Id.* at *8. The panel noted that there was evidence Petitioner was not taken in front of a magistrate, but even if that was true, it was only one factor in determining whether Petitioner's confession and waiver of rights was voluntary. *Id.* The court affirmed Petitioner's conviction. Petitioner did not file an application for permission to appeal to the Tennessee Supreme Court.

In July 2019, Petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel, who filed an amended petition. Petitioner alleged trial counsel was ineffective in a variety of ways, including failing to adequately argue the motion to suppress.

*Testimony at the Post-Conviction Hearing*

At the hearing on the post-conviction petitions, trial counsel testified that he was appointed to represent Petitioner at trial. At that time, trial counsel had been practicing law for 14 years, and his practice was 100% criminal. He provided Petitioner with discovery and met with him "multiple times" to discuss the charges against him and the range of punishment. Trial counsel remembered that "[t]he facts in the case against [Petitioner] were overwhelming."

Trial counsel admitted that Petitioner was not arrested and brought to general sessions court because he was "arrested in Georgia and he was indicted not in custody." Trial counsel understood that because of the way Petitioner's case originated, he was "not entitled to a preliminary hearing." Trial counsel acknowledged that Rule 5 of the Tennessee Rules of Criminal Procedure provided for a scenario where a defendant can request to have a case remanded to general sessions for a preliminary hearing, but trial counsel could not recall if he and Petitioner ever discussed this possibility.

Trial counsel explained that he was "risk a[]verse" and tried to settle most cases. Trial counsel recalled that Petitioner "repeatedly asked for the death penalty." Trial counsel explained to Petitioner that there were no aggravating factors in the case so the State would not be seeking the death penalty. Trial counsel tried to get Petitioner to ask for a plea agreement of 40 years to get the State to recognize Petitioner was "serious about settling the case." Trial counsel thought that this might result in a negotiation to a plea that involved some type of lesser included offense and a shorter sentence. Petitioner was not

amenable. Trial counsel recalled that the State ultimately offered Petitioner 25 years for a plea to second degree murder. Trial counsel recognized that Petitioner was 53 years of age at the time and that was "not really a great offer[,]" but that it was better than a life sentence. Petitioner did not want to take the offer and outright rejected it. Trial counsel could not recall if Petitioner, at some point closer to trial, asked for a much shorter sentence.

Trial counsel met with Petitioner "a number of times[,]" estimating ten in total. At times, Petitioner was "dissatisfied" with the number of times trial counsel came to visit and "wrote the Board [of Professional Responsibility]" (B.P.R.) to complain about trial counsel's representation.

Trial counsel eventually developed a theory of the case when he realized Petitioner was completely averse to negotiation. Petitioner was a former firefighter with numerous bouts of depression. Petitioner also suffered from alcoholism and wrote a suicide note prior to the events that gave rise to the indictment. Trial counsel intended to try to prove that Petitioner did not have the intent to murder the victim. Trial counsel discussed all of this with Petitioner.

Petitioner told trial counsel that he was taking Ambien at the time of the incident. Trial counsel had Petitioner evaluated by Dr. Charles Walker, a psychiatrist at Vanderbilt University Medical Center. Dr. Walker found Petitioner competent to stand trial, but his report indicated a long-term struggle with depression and an IQ within low average limits. Trial counsel also hired a private investigator as part of his trial preparation.

Trial counsel filed a motion to suppress Petitioner's statement prior to trial. Trial counsel recalled that Petitioner was arrested in south Georgia after a high-speed chase. When Petitioner exited the car, he had a gun. Georgia police had to use a taser on Petitioner. Petitioner told the police he wanted them to shoot him, telling the officers, "after I shot her, I emptied all the bullets out of the gun." Petitioner eventually gave a "long, detailed statement" to Memphis police.

Trial counsel recalled that the motion to suppress was based on the argument that Petitioner "had been arrested and he was not given a probable cause determination by a magistrate or judge" and therefore his due process rights were violated and there was a presumption that the statement was coerced. Trial counsel did not include the findings from Dr. Walker's report in the motion to suppress as a basis to support the motion because he did not think the findings would aid in the success of the motion. In trial counsel's assessment, Petitioner was a 53-year-old professional who "never [had] a lack of understanding" about the trial process and "did not appear . . . to have any comprehension issues." Trial counsel had also filed similar motions in the past that included mental health or IQ issues and found them to be unsuccessful. Trial counsel recalled that the motion to

suppress was denied and could not recall if he raised the denial of the motion in the motion for new trial.

Trial counsel recalled that Petitioner requested a change of venue. Trial counsel refused to file the motion. Trial counsel did not think the motion would be successful and did not think it was a wise strategic decision to move the case from Shelby County.

Trial counsel remembered that Petitioner testified at trial. Trial counsel explained that was the "only way" to negate Petitioner's mens rea and get the suicide note and proof about Petitioner taking Ambien into evidence. Trial counsel was cognizant that Petitioner had five prior convictions for domestic assault in Mississippi and did not want those to come in if Dr. Walker testified. Trial counsel spent "a couple different days" helping Petitioner prepare for testifying at trial. Trial counsel could not recall how many witnesses he put on the stand for the defense but recalled at least one witness, Larry Fletcher, Petitioner's supervisor. Trial counsel represented Petitioner on appeal but did not recall how the appellate court ruled on the issues.

Petitioner testified at the hearing. He recalled that he was arrested on "9/11" in Georgia in a "crazy situation" where he was "apprehended on one of the interstates" by "several troopers and police and sheriffs" with guns drawn. Petitioner did not remember a police chase but recalled being "tasered." Petitioner received two cracked ribs and a cracked collarbone during the arrest.

Petitioner testified that he did not meet with a lawyer or appear before a judge after his arrest. His next contact with a person was during an interview with a Memphis detective on September 17. Petitioner was kept in a small cell for 23 hours a day. Petitioner knew why he had been arrested but claimed that no one ever explained his rights until the detective from Memphis came to interview him about the shooting. Petitioner claimed that he was not thinking 100% clearly when he waived his rights.

Petitioner talked to trial counsel about his confinement and waiver of rights. Petitioner insisted that if he had been represented at the time the detective came to speak to him, "[i]t might have made a difference." Petitioner claimed that trial counsel never explained the preliminary hearing process and that if he knew what a preliminary hearing was he may have asked for one. Petitioner described the defense strategy as "diminished capacity," in other words that he "wasn't in [his] right mind because of using the sleeping pills and drinking the alcohol."

Petitioner admitted that he told trial counsel that he wanted the death penalty but that he eventually changed his mind. Petitioner remembered talking to trial counsel about a plea offer of 40 years. Petitioner testified that he would not take a 40-year offer but that

he would "sign for 35." Petitioner insisted that he "never [at] any time" heard about a 25-year offer.

Petitioner understood from discussions with trial counsel that it would be in his "best interest" to testify at trial. Petitioner suspected this was because trial counsel wanted him "to read [the] suicide letter" in court.

Petitioner remembered trial counsel coming to visit him once every six months. Trial counsel "gave [him] some questions" to prepare for his testimony. Petitioner remembered asking trial counsel to move the trial. Trial counsel did not want to change the venue. Petitioner eventually filed a pro se change of venue motion right before he sent a letter to the B.P.R. complaining about trial counsel's representation.

Petitioner informed the post-conviction court that he eventually received his GED after leaving school in the 11th grade. Petitioner also took some college classes and was certified as both an EMT and a firefighter. He worked as a firefighter for about 10 years.

The post-conviction court entered an order denying relief. The post-conviction court recounted the facts that gave rise to the petition and the testimony from the post-conviction hearing. The post-conviction court determined that even if there was a preliminary hearing, "it would neither have been beneficial, [n]or changed Petitioner's case in any way." The post-conviction court noted that Petitioner failed to show any proof to the contrary and failed to show that but for counsel's alleged error, the result of the proceeding would have been different, denying relief on this ground. The post-conviction court also determined that Petitioner failed to show trial counsel was ineffective for failing to file a motion to change venue where trial counsel made a tactical decision to keep the case in Memphis. The post-conviction court dismissed Petitioner's claim that trial counsel failed to meet with him on a routine basis. The post-conviction court noted trial counsel's actions "did not fall below an objective standard of reasonableness under prevailing professional norms." The post-conviction court also denied relief on the basis that trial counsel failed to adequately argue the motion to suppress or offer proof about whether Petitioner was brought before a magistrate during his detention in Georgia. The post-conviction court noted that trial counsel was deficient in failing to offer "such proof about [] Petitioner's detainment in Georgia" but recognized that this was but one factor to be considered in determining the voluntariness of the confession. Additionally, the post-conviction court recognized that Petitioner failed to show prejudice because he did not provide any proof that the motion to suppress would have been granted if the proof had been offered about the detainment in Georgia. The post-conviction court also determined that trial counsel made the strategic decision not to introduce evidence of Petitioner's IQ at the suppression hearing and Petitioner failed to show trial counsel was ineffective as a result because IQ was "only one factor considered."

Petitioner appealed.

## *Analysis*

On appeal, Petitioner argues that trial counsel was ineffective for failing to adequately argue the motion to suppress, specifically by failing to offer proof that Petitioner was not brought before a magistrate during his detention in Georgia and that Petitioner had low cognitive ability and lacked education. Petitioner abandons all other issues raised in the petition for post-conviction relief on appeal. The State argues that Petitioner failed to show the motion to suppress would have been successful if the proof was presented at the suppression hearing and failed to show that the verdict would have been different if the confession were excluded. Additionally, the State contends that the post-conviction court properly accredited trial counsel's testimony that it was a tactical decision to forgo introduction of evidence about Petitioner's cognitive functioning.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. *See Fields*, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. *Id.*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523

S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).  Recently, our supreme court explained that establishing a claim for ineffective assistance of counsel based on counsel's failure in a motion to suppress "creates an additional step" in the traditional *Strickland* analysis.  *State v. Phillips*, 647 S.W.3d 389, 404 (Tenn. 2022).

> The petitioner must prove that (1) a suppression motion premised on the alleged unconstitutional [ground] would have been meritorious; (2) counsel's failure to file such a motion on such grounds was objectively unreasonable; and (3) but for counsel's objectively unreasonable failure to raise [the] particular issue in a suppression motion, there is a reasonable probability that the verdict would have been different absent the excludable evidence.

*Id.* at 405.  "The [p]etitioner must prove all three of these prongs in order for his claim of ineffective assistance of counsel to succeed."  *Id.*

Here, Petitioner complains that trial counsel was ineffective for failing to offer proof at the suppression hearing that Petitioner was not taken in front of a magistrate while he was incarcerated in Georgia.  The post-conviction court determined that Petitioner failed to offer any proof that this decision resulted in prejudice.  We agree.

On direct appeal, this Court noted that there was no testimony or evidence introduced at the two-day suppression hearing about whether Petitioner was brought before a judge or magistrate prior to his formal statement.  *Ellis*, 2018 WL 4584124, at *8.  The Court noted that whether Petitioner was brought before a judge or magistrate was only one factor it examined when determining whether Petitioner's confession was voluntary and could not conclude that the alleged delay rendered the confession and waiver of rights involuntary.  *Id.*  In other words, this Court determined on appeal that the suppression motion would not have been meritorious, something Petitioner is required to show to be successful on post-conviction.  *Phillips*, 647 S.W.3d at 405.  Other than his testimony, Petitioner offered no other proof at the hearing on the post-conviction petition to show that

the motion to suppress would have been successful if trial counsel had introduced evidence that he was not brought in front of a magistrate or judge prior to his confession. Petitioner is not entitled to relief on this issue.

Similarly, the post-conviction court properly determined that trial counsel was not ineffective for failing to offer proof of Petitioner's low IQ and/or lack of education. Trial counsel testified at the hearing that he made a strategic decision to forgo evidence of Petitioner's cognitive ability at the suppression hearing because the evidence did not support suppression of Petitioner's statement on that basis. Trial counsel had Petitioner evaluated by an expert and noted that the expert declared Petitioner competent to stand trial. Trial counsel testified that Petitioner was a career fireman and "did not appear to have any comprehension issues." In fact, Petitioner himself testified that although he quit school in 11th grade, he eventually earned his GED, took some college classes, and was certified as both an EMT and a firefighter.

A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). "In considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

Trial counsel made the strategic decision not to include proof about Petitioner's cognitive ability in the motion to suppress, and Petitioner has not presented evidence that trial counsel was deficient in this respect or that this strategy prejudiced him. Thus, the evidence does not preponderate against the post-conviction court's finding that trial counsel was not deficient in this regard, and Petitioner is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

TIMOTHY L. EASTER, JUDGE